I wish to reserve five minutes for rebuttal. Basically, in drafting my briefs and such, I have recognized the fact that this case is not one about excessive force, but one about the Rule 50 rule with regard to competing evidence that needs to be presented to a jury. However, in evaluating the evidence, you have to look at excessive force cases. And so it becomes seductive to look at the excessive force cases rather than look at what the rule provides. And basically, the rule provides that if there is conflicting material facts, and a material fact would be one that would change the position of the jury, then the case definitely should have gone to the jury. Now, in this case, that didn't happen, even though, in my opinion, there's a number of facts that are in conflict. This is a very short span of time, about two minutes, in which police officers and their vehicles are pursuing my client as a passenger in a 280Z. The first vehicle to arrive is Officer Green. The second, Officer McBride. And the third, Officer Green. I don't have very much time. Can I ask you about the only possible factual conflict that might be significant? And that is, what is the evidence exactly with regards to the whether and how and where Green was shot after he was on the ground? Whether, you mean, whether Smith was shot? Well, there was some. The district judge at the time of the Rule 50 motion seemed to be under the impression that the evidence was that he was not shot at all while he was on the ground, that the shots all occurred earlier. So I would like to know what the evidence is on that issue. That he was shot on the ground. Yes. Okay. First off. And where, whether it was in the back and so on. My client apparently was at the front of the vehicle. One witness, Ms. Hill, claims he was dragged to the front of the car after he was shot in the car. What evidence is there? It's circumstantial. Officer Green claims that the individual rolled to his right and presented his chest to him and he fired at him. Well, we know from the paramedics that he was paralyzed when the paramedic arrived. He'd been shot in the neck and paralyzed. So he couldn't possibly have rolled if he had been paralyzed by the bullets that had hit him, fired him falling to the ground in front of the vehicle. The question was whether any bullet hit him while he was on the ground. I have nothing but circumstantial evidence. The evidence from your expert seemed to say the answer to that was no. No, that's wrong. That's what the judge interpreted my client's expert to have said. My expert said it was his opinion that the officer was standing at my client's feet and pointed the gun at him as he lay on the ground with his hands in the air and fired bullets into him. All the bullets are in his back and his neck and his head. He couldn't possibly have moved. I thought you were talking about the, you know, point of entry and exit of the round. I don't understand your question, Your Honor. Question to your expert. The entry points are inconsistent with being struck fully around the ground. The answer was that's right. In other words, he's standing up and you fire and you're on the same plane. Yes. I was just going to go inside one, out the other. But if the person's on the ground and you're back, unless you're standing right on top of them. That's right. There was no evidence presented as to the angle that the bullet entered and exited. No evidence in the trial at all. All I do know is that all the bullets in the submitted to entered through his backside. And all I do know is that a paramedic said his extremities were flaccid when he arrived at 702. And all I do know is that he, according to Green, rolled the officer, rolled to his right. And also Green fired at him and he stopped moving. And those bullets that he presented his chest to the officer ended up in his back. My premise is there's so many inconsistencies in this testimony. Between Green, between the physical evidence, a trail of bullets, casings all the way up to the edge of the car on the passenger's side, the escape car, a cartridge ejected from his weapon. Can you tell me why that matters? I couldn't understand the relevance of that. I'm sorry, I didn't hear you. I didn't understand the relevance of it. I may accept to say that Green may have had effects wrong. But why does it matter to any, why is it material to any issue in the case whether he had, was on this side or on that side? The relevance to that is that it impeaches the witness. He claims he never was on the right side of the car, on the passenger's side of the car, except, and that he was behind the car. Well, look, I mean, in fact, I mean, the reason I focus where I focus is that until Mr. Green is on the, Mr. Smith is on the ground, I don't, Mr. Green, Mr. Smith was shooting at him out of the car and came out with a gun. There's no way that there was going to be an excessive force case until, at a minimum, Mr. Smith is on the ground. So the question is what happened after Mr. Smith was on the ground? Well, let's back up a little bit. You can argue with me about that, but I don't think you're going to persuade any of us of it. So I'm advising you that if you want to make a case, then you ought to try to tell us what happened after Mr. Smith was on the ground. The point is, Your Honor, that there's three different versions of what happened when Mr. Smith got out of the car. One version is that he had a weapon in his hand and didn't point. He simply ran. One version by the officer, Green, is he swung around and pointed the weapon at me. Version three, based upon van driver, is that both of them got out of the car with no weapons in their hands. That's excessive force when you fire at somebody. Smith himself has no version, right? Pardon? Smith himself has no version, right? Smith was not a witness. Precisely. But the fact that Smith is not a witness doesn't necessarily mean that the case is decided in favor of Smith. Of course not. The judge said there is no evidence, however, that any of the rounds were shot at him while he was on the ground actually hit him. No medical evidence on that subject. And that seems to me to be the critical point on this Rule 50 motion. So I'm asking you, what evidence is there to support that? Or what conflicting evidence is there on that point? Well, as I said, you can't roll to your right when you've been paralyzed. And if you've been shot. That's assuming a fact, not an evidence. That's assuming the person was immediately paralyzed. A person can be paralyzed anywhere along the line. Some people get paralyzed days later. Some get paralyzed hours later. Some are mishandled. When he was rolled over on his back, he might have become paralyzed. I have to agree with you, Your Honor. So the fact that at some point he was paralyzed doesn't mean he was paralyzed as soon as he touched the ground. We know that he was. We know that when the paramedics arrived approximately two to three minutes later, he was paralyzed. That testimony was given. Yes. He's a quadriplegic. He's a paraplegic now. He can't recover the use of his arms. All right. When Clark testified, he said that he thought the last volley of shots were the ones that hit Mr. Smith. Yes. And he said, so why isn't that contrary evidence to what the judge found, i.e., that there was no evidence the last shots hit Mr. Smith? That is. That is contrary evidence. Is there a problem that Mr. Clark is not a – this is expert testimony. What was his expertise on that issue? His expertise was as a police procedures expert. So it's a problem that he's not a relevant expert on that subject? That's right. That's why it was excluded by the court. Was it excluded or was it admitted? It was not admitted. So this evidence that I'm reading from that was not admitted? No. Let me see your – I'm reading at ER 7980 approximately. In my brief, can you tell me where that's at, Your Honor? Brief? I have no idea. I'm reading from the excerpt. Okay. Well, that's all I have to offer. Okay. Chris Lockwood for Officer David Green. Just a few very quick points. I don't think there's any dispute that the first round was not excessive in level of evidence. And I agree the focus ought to be on the second round. The testimony to focus things. First of all, we have the testimony from Officer Green, who was basically the only evidence on this subject, saying that he saw Mr. Smith lying on the ground with his head pointing away from the car. At this time, the officer is towards the rear of the car. And he saw Mr. Smith had one hand underneath him. He rolled to his right. It would look like an effort to get his hand up underneath him. That would expose his chest to the officer. So had any shots struck him at that point, they would have hit him in the chest. And the evidence is that nothing at all hit him in the chest. The pages for this one is pages 38 and 39 of the record that talks about the testimony. As far as the expert, he did actually testify at one point that shots did strike on the ground. But that is a completely 180-degree change from a testified to in deposition. Right. So that's what's bothering me. And one piece of the case that's bothering me is that the judge said there's no evidence, however, that any of those rounds that were shot at him while he was on the ground actually hit him. The only evidence that was presented was the cross-examination of Mr. Clark, who said from his analysis it did not appear that the entry wound suggested that he was hit while he was on the ground. And apparently he said that earlier, but at trial he said otherwise quite definitively. So why isn't that enough to get to a jury? That's my problem. Okay. Let me go through what I think. It goes through a little more detail. I might have to answer that question. On page 80 of the excerpts, he did testify, and this is the only testimony at all, that question, do you have an opinion? And you have an opinion, do you not, that none of these bullets fired in the last volley struck Mr. Smith? Isn't that what you told me in deposition? Answer, no, sir, to the contrary. I said I thought that the last volley of shots were the ones that hit Mr. Smith. That's at page 80. He's not quite testifying that that's what he is. He's testifying to what he said in deposition. No, but he did later, quite definitively. That's close. I'll agree. I mean, later he said, I believe that Mr. Smith was shot in the back six times. I believe those shots occurred in the last volley. That is pretty specific. Page 83 is where he was impeached with his deposition. Okay. But that's for a jury, no? Well, there's two answers on that one. There's a rule pretty well established for summary judgment that you can't just change your testimony because it's convenient to do so. And at some point you can just ---- But see, the other problem is the jury was confused. He didn't say that. He said there was no evidence. That's wrong. That technically is true. I think it's more in terms of this is not evidence that a jury reasonably could believe, which I think is the standard under Rule 50. And I think that is an accurate statement. Because the only evidence that was presented was the cross-examination of Mr. Clark who said from his exact analysis it did not appear that the entry rooms suggested that there was any evidence. That's just wrong. So, I mean, the problem is that the judge seemed to have been operating at that point on a misunderstanding of the evidence. I think actually if you look at the argument on that one, the plaintiff's counsel did bring up the testimony. Let me find the page real quick. He'll bring it up now. I think it was brought up at trial during the Rule 50 arguments, if I recall correctly. I'm not positive, so I didn't find that one. But I believe it was argued at that point. I didn't expect quite this question. I would have had it prepared. I think it's the only question. The question I didn't expect is the way it was argued under Rule 50. I know that there was discussion on that one, and I think there's a citation to the expert's testimony. I'm not positive on that one. Well, the Court said that the Court says on page ER-108 that this is what Mr. Clark said in his deposition, and Mr. Arias impeached him with it on the stand. True. That was at that point. But I'm having a hard time seeing why that doesn't get you the hearing. A few answers. Number one, I really think at some point it becomes something no reasonable jury can believe if you just change the testimony and don't explain the change. Number two, there is no foundation at all for this one just thrown-out comment that he believes that the injuries were made while he was on the ground. There's just nothing to support that. Number three, the only evidence on the record concerning the location of Mr. Smith at the time the shots were fired while he was on the ground says that Mr. Smith's chest was towards the officer. There's no contrary evidence whatsoever on that. And if the expert is making a factual assumption based on a position different from that, his factual assumption invalidates his conclusion based on the invalid assumption. Well, in an event, the expert said he really didn't know. I don't know. I believe, I think the evidence speaks for itself. That's what he said. His final statement is he doesn't know what happened. He thinks that they hit him on the ground, as I understand it. But the evidence speaks for itself. And that's it. And I think the final point is even if shots were fired while he was on the ground and even if one or two shots did strike him at that point, which I don't think there's any evidence to support of, you go back to the question under a qualified immunity as applied excessive force, whether that was something a reasonable officer could have done. We've already had a double robbery that morning, a high-speed chase, reckless driving, shots fired out the window, pointed the gun at him when he got there, ignoring commands. Why is it a qualified immunity problem? I mean, if we assume what you're saying, the officer shoots at him. This character has been shooting at the officers. He gets out of his car with his gun. The officer shoots at him. He goes down. He's not entirely down. He starts rolling over, looking like he's going to shoot again, and the officer shoots again. So why is that excessive force? That's the point I'm making. Unless you're qualified, it doesn't make much difference to the analysis, but it is an issue. If he wins on qualified immunity, the city doesn't. The city is actually out of this case on other grounds, and that has not been appealed. Okay. The only party to the case to disagree. Okay. So can I answer your question, Your Honor? I think that's basically there's just no evidence to show that any of the shots on the ground when you look at it from an evidence point of view as opposed to just conclusions with no support, there's no evidence that any of the shots, what is on the ground, did in fact strike him. And I think the analysis stops at that point, because absent any injury, there's nothing that can be excessive. Unless the Court has any questions. Thank you. All right. If you have no further questions, I will just submit based upon what we have. Thank you very much. The matter will stand submitted. OK. Next matter is Hallstein versus city of Hermosa Beach. Morning, Your Honor. May it please the court. My name is Tom Beck. I represent Mr. Hallstein, the appellant. My pitch to this court is rather simple. We made a claim under the 14th Amendment alleging that the officer's conduct also violated state penal standards. By that fact, the 14th Amendment claim was viable. The district court, we also had a First Amendment claim and made a Fourth Amendment allegation with respect to a search that took place April 6th of the DMV computer concerning Mr. Hallstein's license plate. You say it's viable because what happened ought to shock the conscience of the judiciary, correct? Well, yes and no. I mean, that is one way of looking at it. It is the 14th Amendment claim, is it not? It's a substitute process claim? Some cases have said that. Others have said that if violation of a state penal standard or some state law standard gives rise to a liberty interest, and that doesn't necessarily have to shock the conscience. It still is a 14th Amendment claim that's cognizable under 1983. The defense took the position that this was all Fourth Amendment. And because there was no seizure in the traditional sense, there was no violation of a recognized constitutional right. And Officer Bohatchik got qualified immunity as the consequence. I feel the Court's analysis, by putting everything into the Fourth Amendment pot, failed to recognize, as our brief points out, that there is a due process right recognized under the circumstances, and there are many cases. I mean, they're cited. I don't know that I have to repeat them here, but there are many cases that point to California Penal Code to be, to not to be, to either to do or not to do things. And there is another body of law under the 14th Amendment that says essentially, you know, if your discretion as an official is limited, then there is a cognizable due process right. In this case, it's not just limited. It's totally prohibited by the California Penal Code. My analysis of the Fourth Amendment claim as to the – the Court took the position on the Fourth Amendment claim that by reading the license plate, that that wasn't a violation of it. It wasn't a search. And I agree. That wasn't a search. We're not arguing that there's any privacy expectation in the license plate. What we're arguing is that this is the culminating act of a series of harassing episodes while the plaintiff was under the protection of the chief of police, while Biatchik had orders to stay away from him and his wife, to continually harass, stalk, and otherwise annoy these people. And when it came to running that license plate by the officer's own admission, he was on duty, and he had no official purpose for getting into that DMV computer, and yet he did it. And – So it's the DMV's computer. I mean, it might be of privacy interest, but it's not a search for purposes of the First Amendment. It might be a California privacy claim or something, but it wasn't his computer. It was the DMV's computer, and the DMV already had the information. The information was no longer private in that sense. Well, I disagree, because there is an expectation of privacy by the plaintiff, and a reasonable one at that, that the DMV will not release that kind of information, that it holds private and confidential by California law, except to an authorized person for an authorized purpose. And we have in this case unconfidential – What's your best case that that's a Fourth Amendment violation? My best case? Well, I'll have to look at my brief, but I can't tell you that off the top of my head. I do – Okay. Well, I'll just look at your brief and try to figure out – Yeah, in the interest of time, I'd rather not do that now. My position is that if the – if there's a reasonable expectation of privacy in that database, and I think that the statutes provide for that, then a deprivation of that right is recognized when the authorization is misused. The officer had no lawful business getting into that computer and did it for purely personal purposes. That, I believe, is a cognizable Fourth Amendment deprivation. The First Amendment deprivation that the Court rejected was that this was not a chilling effect on Mr. Hallstein's First Amendment's rights. And I didn't approach this as a chilling effect. What I pointed out was that as soon as he made his first complaint, stemming from the July 22nd complaint incident, the one that almost got him knocked over, everything from that point forward was a reprisal for having made that complaint. He did it against the wishes of Sergeant Endham, who was the witness at that particular moment, and everything from that point forward was an attempt to retaliate in some form or another. And the retaliation – They've been sort of hassling each other before that, right? Excuse me? They have been rather hassling each other before that, right? No, that's not true. That's not true. What happened is that July – many years ago, these two people were friends. Something turned around in July 22nd, 2000, that brought it to a head. There was a great deal of animosity between them at that time, and it almost came to blows on July 22nd. There had been no personnel complaints before that. There had been no involvement of the police department before that. I'm not talking about involvement of police departments. Didn't he get himself a scanner and wasn't he sort of following the officer? That is completely untrue, and there's no evidence in the record to suggest that. Okay. What the defense has tried to do is turn this around and make him the stalker as opposed to the officer being the stalker. And the fact of the matter is that at the end of 1999, the evidence was Mr. Halstein bought a scanner to listen to what was going to happen at the Millennium, because there was all kinds of concerns about the doomsday aspect of it all. That scanner did allow him to listen in on Huntington Beach – not Huntington Beach, but Hermosa Beach police recordings. But that doesn't mean that it was directed to Bohatnik. In fact, the evidence was that many times, because it's a very, very small city – this is 1.2 square miles total, and his shop's in the middle of the town, and he's a locksmith, so he's traveling all the time – that he'd show up or be present when there were police activities going on. In other cases, as an observer, never got involved, never participated with Bohatnik and others up and down. And one incident comes to mind, and Sergeant Nancy Cook was an individual who had – Let's go back to your First Amendment claim, because my intuition is that if there's anything viable here, it's that. So what happened after the complaints that you would say was retaliation for the exercise of the First Amendment? Well, once the complaint was made and Bohatnik was ordered to stay away from the Halsteins, within two weeks, the incident at Subin's weightlifting gym or whatever – There's a real state action problem after that incident, it seems to me. Go ahead. He wasn't in police uniform at that point. That is true. It was not on duty. But there were other times that the record reflected that he was in an automobile and he brought it to rest in front of the plaintiff's car or in front of the plaintiff's wife's car and then just held up traffic, deliberately doing this to frighten these people. No legitimate government interest being recognized or motivating it. And that's what the department told them. They made – sustained that complaint and sent it out for prosecution. The department took the position that he had no lawful basis for making contact with Mr. Halstein at all. And the unusual thing of asking for a criminal prosecution, I mean, if it rises to that level in the department's eyes, I can't see how this does not rise to a substance of due process deprivation in the eyes of anybody else. And that was where I feel the district court went wrong. I mean, if you look at the authorities and the history of what's been recognized short of a traditional seizure, our case fits into that. And for any example of something, I mean, if you're trying to – I would try to steer you to the first amendment, but you don't feel like going there. You want to go to the substance of due process claim. What's the closest case that you can think of in which meets a shock-to-conscience standard? Well, most of the shock-to-conscience cases that I've come across, particularly in this circuit, have to do with other facts, having to do with firearms, weapons used against the person. Physical injuries were significant. This is not that kind of a case. What we're talking about here is a willful violation of the law by a police officer on repeated occasions. And if that wasn't shock-to-judicial conscience, I don't know what should. That was a willful violation of the law. I'm sorry? That was a willful violation of the law. On July 22nd. I mean, there was the July 22nd incident, and perhaps there was the license search. What else? Well, that was April 6th, the license search. I'm talking about what happened, the preliminary incident, July 22nd. There was an assault under California law. There was terrorist threats under California law. After that, all the staring and all that violated California law? No, no, no. Staring has nothing to do with it except in the retaliation phase. This is on the day on the pier on July 22nd when Officer Bohatchik got into the client's face, challenged him to fight, which is a violation of Penal Code section 415.1, subsection 1, committed an assault, which is 240pc under California law, made terrorist threats, which is 422pc under California law. All of those are deliberate violations, intentional violations of what the law prohibits. And this is on duty done by this defendant, and I daresay that that is a liberty that the client should have recognized or that the law should recognize on behalf of him, and that this is, in fact, a substance abuse process claim, as the case of history long and always established and continues to establish. Whether or not he was beat to a pulp or had been shot full of bullets is not material for shocking the conscience. A police officer is expected to obey the law. If they do not and intentionally do not, I daresay that that should, if the test is shocking the conscience, should achieve that purpose. I also would remind the Court that we have these statutes that set up the liberty interest under the recognized authorities, and that would substantiate a due process claim. I'll save what, 34 seconds I've got. Scalia. That's what's used up for you all out there. Can I have a refund? We'll think about it. Thank you.
judges: Pregerson, Fernandez, Berzon